IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:15-CV-417-DCK

| | |
|---|---|
| ANNE BACLAWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| PETER FIORETTI; MOUNTAIN ) | |
| REAL ESTATE CAPITAL LLC; and ) | |
| MOUNTAIN ASSET MANAGEMENT ) | |
| GROUP LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 63) and "Defendants' Motion For Partial Summary Judgment" (Document No. 65). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. Having carefully considered the motions, the record, applicable authority, and the arguments of counsel at a hearing on June 29, 2017, the undersigned will deny Plaintiff's motion, and grant in part and deny in part Defendants' motion.

I. BACKGROUND

By this action, Plaintiff Anne Baclawski ("Baclawski" or "Plaintiff") "seeks redress for overtime violations and unlawful retaliation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA")." (Document No. 14, p.1). Plaintiff was employed by Defendants between October 2013 and June 2015.

"Plaintiff's primary duties and responsibilities were running errands for, serving as a housekeeper and nanny for, and taking care of the personal residences of Mr. Peter Fioretti." (Document No. 14, p.1). Although Plaintiff primarily worked for Defendant Peter Fioretti ("Fioretti"), she claims that Defendant Mountain Real Estate Capital LLC ("Mountain") was also her employer and/or "joint employer." (Document No. 14, p.3). Plaintiff further contends that Defendant Mountain Asset Management Group LLC ("Mt. Asset Mgmt.") was her employer and/or "joint employer," and that she received her paycheck from Mt. Asset Mgmt. (Document No. 14, p.4).

More specifically, Plaintiff alleges that she worked a "substantial number of overtime hours," but instead of paying her appropriately for those hours, Defendant Fioretti, Mountain's chief executive officer, sought to misclassify her as a 1099 independent contractor and an exempt, salaried employee of Mountain - in order to evade overtime pay requirements. (Document No. 14, p.1). "As a result, Plaintiff repeatedly complained to Fioretti about the fact that she was not being compensated for the substantial number of overtime hours that she was working." (Document No. 14, p.89). In or about June 2015, Plaintiff resigned her employment. (Document No. 14, pp.90-91).

Plaintiff alleges that Defendants retaliated against her when she sought compensation for her overtime hours by: demanding repayment of $25,000; threatening her arrest; and threatening to sue her boyfriend, John Milem ("Milem"). (Document No. 14, p.2, 91-92).

Baclawski initiated this action with the filing of her "Complaint" (Document No. 1) on September 8, 2015. Plaintiff contends that Defendants violated the Fair Labor Standards Act and the N.C. Wage and Hour Act by failing to pay Plaintiff time and a half for hours worked during
2

the course of her employment, and by unlawfully retaliating against the Plaintiff.  See (Document No. 1).

On November 4, 2015, Mountain and Fioretti filed an action against Plaintiff and Milem in the Superior Court of Mecklenburg County.  (Document No. 14, p.92).  The allegations in the state court action include stealing a mattress from Defendant Fioretti, using Defendants' money to repair a truck, and failing to disclose that Plaintiff had an economic interest in Milem's company when she recommended that Defendant Fioretti retain its services.  Defendants contend that they were unable to bring these claims in this federal lawsuit because the claims are not compulsory counterclaims and because this Court did not have an independent jurisdictional basis over those claims or Milem.

Plaintiff's "First Amended Complaint" (Document No. 14) was filed on November 21, 2015, and asserts five (5) causes of action against Defendants:  (1) Fair Labor Standards Act – Overtime Wages;  (2)  Fair Labor Standards Act – Retaliation;  (3) N.C. Wage and Hour Act – Overtime Wages;  (4) N.C. Wage and Hour Act – Retaliation;  and (5) N.C. Retaliation In Employment Discrimination Act - Retaliation.  (Document No. 14, pp.94-99).  The "Answer to Amended Complaint by Peter Fioretti, Mountain Asset Management Group LLC, and Mountain Real Estate Capital LLC" (Document No. 15) was filed on December 14, 2015.

On January 6, 2016, the Court entered a "Pretrial Order And Case Management Plan" (Document No. 18).  The Court set case deadlines as follows:  discovery completion – July 15, 2016;  mediation – August 5, 2016;  motions deadline – September 16, 2016;  and trial – January 9, 2017.  (Document No. 18).

The parties filed a "Notice Of Settlement" (Document No. 28) on July 1, 2016;  however, in exchanging settlement documents, the parties realized they had a continuing dispute that

3

Case 3:15-cv-00417-DCK   Document 77   Filed 07/18/17   Page 3 of 12

prevented complete agreement.  See (Document Nos. 30, 33, 37 and 41).  The undersigned ultimately declined to enforce the purported settlement agreement.  See (Document No. 48).

On November 21, 2016, the parties filed their "Joint Stipulation of Consent to Exercise Jurisdiction by a United States Magistrate Judge."  Case deadlines were re-set on January 19, 2017 as follows:  discovery completion – March 31, 2017;  motions deadline – April 21, 2017;  and trial – August 7, 2017.  (Document No. 55).  The undersigned held a status and motions hearing on June 29, 2017.

Now pending before the Court are Plaintiff's "Motion For Summary Judgment" (Document No. 63) filed April 18, 2017;  and "Defendants' Motion For Partial Summary Judgment" (Document No. 65) filed April 21, 2017.  The motions are fully briefed and ripe for review and disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).  Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

When considering cross-motions for summary judgment, a court evaluates each motion separately on its own merits using the standard set forth above. See Rossignol v. Voorhaar, 316 F.3d 516, 522 (4th Cir. 2003); accord Local 2-1971 of Pace Int'l Union v. Cooper, 364 F.Supp.2d 546, 554 (W.D.N.C. 2005). Both Plaintiff and Defendants have moved for summary judgment, and the Court will analyze each motion in turn.

### III. DISCUSSION

**A. Plaintiff's "Motion For Summary Judgment"**

Plaintiff's motion seeks summary judgment on her first and third causes of action for overtime wages. (Document No. 63, p.1; Document No. 14, pp.94-97). To be precise, Plaintiff requests that the Court immediately "award damages against Defendants, jointly and severally, in the amount of . . . $93,657.72, consisting of $46,828.86 in compensatory damages and $46,828.86 in liquidated damages, plus pre- and post-judgment interest, attorneys' fee and costs, and for any other, further, and different relief as the Court deems just and equitable." (Document No. 63, p.1).

Plaintiff argues that there is no genuine issue as to any material fact in this FLSA case. (Document No. 64, p.1). Plaintiff further argues that she was "not compensated at the legally

5

required time-and-one-half overtime rate;" and that Fioretti has admitted that she worked long hours, and that she worked in excess of forty (40) hours per week in approximately half of her workweeks.  Id.

Although Plaintiff initially states "[t]here is no genuine issue as to any material fact" in this case, she later acknowledges that Defendants have challenged her alleged working hours as inaccurate on at least fourteen (14) days.  (Document No. 64, p.2).  Plaintiff argues "there can be no dispute that Plaintiff is entitled to summary judgment for at least 50% of the workweeks that Fioretti admitted that she worked over 40 hours per week without receiving overtime compensation."  (Document No. 64, pp.1, 7).

Plaintiff contends that between January 1, 2014 and September 28, 2014, she was misclassified as an independent contractor, and was paid at a set weekly rate of $1100 per week, and never received overtime.  (Document No. 64, pp.3-4).  In addition, Plaintiff contends that she was misclassified as an employee exempt from the FLSA's overtime provisions when she was treated as a W2 employee between September 28, 2014 and the end of her employment, June 2015. Id.

Plaintiff also argues that she is entitled to liquidated damages for the amount of unpaid wages or overtime.  (Document No. 64, p.23) (citing 29 U.S.C. § 216(b).  Plaintiff notes that "an award of liquidated damages is mandatory, but may become discretionary if the employer can establish to the satisfaction of the court that the act or omission giving rise to such action was in good faith and the employer had reasonable grounds for believing that his act was not in violation of the FLSA.  (Document No. 64, pp.23-24).

In response, Defendants assert that Plaintiff was properly classified as an independent contractor from October 2013 through September 2014, and properly classified as an exempt

6

employee from September 2014 through her resignation. (Document No. 68, p.1). Defendants then succinctly state their basis for opposition as follows:

> Even if Plaintiff was improperly classified during either of those periods, which is strenuously denied, Plaintiff would still not be entitled to summary judgment on her overtime claim. The evidence in this case shows that Plaintiff's purported hours cannot possibly be accurate, which casts serious doubt on all her hours, and certainly merits denial of her Motion. At minimum, a jury must determine the numerous disputed factual issues related to Plaintiff's claimed hours, again, making summary judgment inappropriate.

Id.

As recognized by Plaintiff, Defendants specifically challenge at least fourteen (14) days of Plaintiff's time-keeping. Moreover, as discussed during the hearing, Defendants also contend that they challenge virtually every day of Plaintiff's time-keeping because she purportedly included, among other things, travel time that Defendants argue they should not be required to compensate.

In short, the undersigned finds that there are genuine issues of fact regarding the hours Plaintiff worked, how her time was recorded and reported, and the proper classification of the type of work Plaintiff did for Defendants. These issues preclude summary judgment for Plaintiff on her first and third causes of action, and her motion will therefore be denied.

## B. "Defendants' Motion For Summary Judgment"

In their motion for summary judgment, Defendants assert that they are entitled to judgment as a matter of law that: (1) overtime compensation, if awarded, should only be in the amount of one-half Plaintiff's regular pay rate, instead of one-and-one-half times her regular pay rate; and (2) Plaintiff's retaliation claims cannot be based on the state court action. (Document No. 65, p.1; Document No. 66, p.1). Defendant first notes that Plaintiff's employment for Defendants can be divided into three (3) distinct time periods. (Document No. 65, pp.1-2). Defendants argue that it

7

is undisputed that in each of these time periods, although Plaintiff's hours worked fluctuated from week to week, she received a fixed salary that did not vary with the hours she actually worked. Id.

In addition, Defendants note that Plaintiff has admitted under oath that she used Fioretti's money for her personal use and failed to return certain personal property after Fioretti demanded return of those items; therefore, Defendants contend that Plaintiff has admitted liability, at least in part, for claims brought against her in the state court action. (Document No. 65, pp.2-3). As such, Defendants conclude there can be no claim here for retaliation based on filing the state court action.

### 1. Overtime Rate

Defendants summarize the applicable law as follows:

> Generally, under the FLSA, an employee who works more than 40 hours in a given week is entitled to overtime pay at the rate of one-and-a-half times his regular hourly rate. 29 U.S.C. § 207(a)(1). However, when an employee receives a fixed salary for fluctuating hours, the employee's regular pay rate is calculated using 29 C.F.R. § 778.114(a). Bailey v. Cty. of Georgetown, 94 F.3d 152, 154 (4th Cir. 1996). When an employee's hours fluctuate week to week, the set salary serves as compensation for all hours worked during any given week, regardless of how few or how many hours are worked. Monahan v. Cty. of Chesterfield, 95 F.3d 1263, 1280-81 (4th Cir. 1996) (citing § 778.114(a)). Therefore, if an employee works more than 40 hours in a week, she has already been compensated for all excess hours over 40 via the fixed salary. Mayhew v. Wells, 125 F.3d 216, 218 (4th Cir. 1997) (affirming district court's decision to award half-time overtime pursuant to § 778.114).

(Document No. 66, p.6).

The parties agree that in order for the fluctuating workweek calculation to apply, 29 C.F.R. § 778.114(a) and the cases interpreting it establish four basic factors that must be present: 1) the employee's hours fluctuate week to week; 2) the employee receives a fixed salary that does not vary with the number of hours worked each week; 3) the employee's salary is sufficiently high

8

that the employee does not receive less than minimum wage in a given workweek; and 4) the employee and employer share a clear mutual understanding that the fixed salary will be paid regardless of the number of hours worked. (Document No. 66, p.6; Document No. 70, p.11) (citing Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354-357 (4th Cir. 2011)).

Defendants go on to argue that "the employer and employee do not have to expressly agree that a fixed salary will be paid regardless of the actual numbers worked;" "[i]nstead, the 'clear mutual understanding' requirement is satisfied based [on] an implied agreement when the employee's actions show that she understood the payment structure, even if the employee's 'after the fact verbal contentions' show otherwise." (Document No. 66, p.7) (citing Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 131 (4th Cir. 2015); Monahan, 95 F.3d 1281, n.1281; and Mayhew, 125 F.3d at 219).

Plaintiff's response indicates that her only challenge to the fluctuating workweek overtime calculation involves the fourth factor – requiring a "clear mutual understanding that the fixed salary will be paid regardless of the number of hours worked." See (Document No. 70, pp.11-12). Plaintiff contends that there was no "clear mutual understanding" because "the evidence establishes that Plaintiff not only objected, repeatedly, to Defendants' failure to pay overtime, but also resigned her employment in protest when Defendants continued to refuse to pay her overtime." (Document No. 70, pp.12-13). Plaintiff further asserts that she repeatedly complained about her hours and lack of overtime payment to Fioretti, and that she has repeatedly testified that she expected to be paid overtime wages. See (Document No. 70, pp.13-15). She also contends that she lodged both written and verbal complaints about her hours and compensation. (Document No. 70, pp.2, 16).

9

Case 3:15-cv-00417-DCK Document 77 Filed 07/18/17 Page 9 of 12

In reply, Defendants contend that Plaintiff never complained about her alleged hours or entitlement to overtime, and that she has yet to identify a single such complaint in any writing that pre-dates her resignation. (Document No. 73, p.3).

The undersigned finds that this issue presents a close call. Certainly the Amended Complaint indicates in great detail that Plaintiff's hours of work fluctuated from day-to-day and week-to-week. Moreover, it appears undisputed that during each of the three different time periods of Plaintiff's employment with Defendants she received a set paycheck, regardless of the hours she worked – which often, but not always, exceeded forty (40) hours. It is also the undersigned's understanding based on the papers and the arguments at the motions hearing that there were a number of weeks Plaintiff worked less than forty (40) hours, but still collected her regular fixed payment. The undersigned is not aware of any evidence that Plaintiff attempted to return any compensation to Defendants, or that Defendants complained, or even noted, when she worked less than forty (40) hours per week.

The briefing on the pending motion is in direct conflict as to whether there is evidence that Plaintiff complained orally and in writing about her hours and repeatedly alleged she was entitled to overtime wages. Thus, the parties' briefs indicate there is a genuine issue of fact for a jury as to whether the parties had a "clear mutual understanding" about Plaintiff receiving a fixed salary regardless of the hours worked. Under the circumstances, the undersigned finds that this matter should go to a jury to weigh the parties' evidence, or lack thereof, that there was a clear and mutual understanding about a fixed payment for fluctuating hours. As such, Defendants' motion will be denied as to this issue.

### 2. Retaliation

Defendants' second issue is not as close. Here, Defendants assert that "[i]t is axiomatic that an employer's lawsuit against an employee constitutes unlawful retaliation under federal employment statutes <u>only</u> 'when the lawsuit is filed with a retaliatory motive and lacking a reasonable basis in fact or law.'" (Document No. 66, p.11) (quoting <u>Darveau v. Detecon, Inc.</u>, 515 F.3d 334, 341 (4th Cir. 2008)) (emphasis added by Defendants). Defendants cite several issues between the parties, including Mr. Milem, regarding a mattress, a passport, and auto repairs that are allegedly admitted by Plaintiff. (Document No. 66, pp.11-15). Defendants argue, therefore, that their state lawsuit has a reasonable basis in fact and law, and is likely meritorious. <u>Id.</u> Defendants conclude that the "undisputed evidence in this case shows that Plaintiff is liable to Mountain Real Estate and Mr. Fioretti for at least some of their claims in the State Court Case." (Document No. 66, p.15).

In response, Plaintiff seems to miss the fact that Defendants' motion is focused solely on the alleged retaliation of filing a state court lawsuit. (Document No. 70, p.18). Plaintiff complains that Defendants' argument "ignores all of Defendants' <u>other</u> retaliatory conduct." <u>Id.</u> However, Defendants are not seeking judgment by this motion as to the other alleged retaliatory conduct.

Plaintiff does argue that she has "raised a triable issue of fact as to whether the State Court Action was retaliatory." <u>Id.</u> Although some of Plaintiff's retaliation claims should survive, the undersigned agrees with Defendants that claims related to, and identified in, the state court action are not retaliatory as a matter of law. As such, the undersigned is not persuaded that there is a triable issue for a jury in this matter as to retaliation claims related to the state lawsuit. Defendants' motion will be granted as to this issue.

11

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion For Summary Judgment" (Document No. 63) is **DENIED**; and "Defendants' Motion For Partial Summary Judgment" (Document No. 65) is **GRANTED in part** and **DENIED in part**, as described herein.

**IT IS FURTHER ORDERED** that a trial in this matter, if necessary, will be held during the undersigned's civil term beginning **October 30, 2017**.

**SO ORDERED**.

Signed: July 18, 2017

David C. Keesler
United States Magistrate Judge