IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:15-CV-417-DCK

| | |
|---|---|
| ANNE BACLAWSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| PETER FIORETTI; MOUNTAIN | ) |
| REAL ESTATE CAPITAL LLC; and | ) |
| MOUNTAIN ASSET MANAGEMENT | ) |
| GROUP LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Second Motion For Partial Summary Judgment" (Document No. 117) and Plaintiff's "Motion For Partial Summary Judgment" (Document No. 120). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. Having carefully considered the motions, the record, and applicable authority, the undersigned will <u>grant</u> Defendants' motion and <u>deny</u> Plaintiff's motion.

## I. BACKGROUND

By this action, Plaintiff Anne Baclawski ("Baclawski" or "Plaintiff") "seeks redress for overtime violations and unlawful retaliation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA")." (Document No. 14, p.1). Plaintiff was employed by Defendants between October 2013 and June 2015.

"Plaintiff's primary duties and responsibilities were running errands for, serving as a housekeeper and nanny for, and taking care of the personal residences of Mr. Peter Fioretti."

(Document No. 14, p.1). Although Plaintiff primarily worked for Defendant Peter Fioretti ("Fioretti"), she claims that Defendant Mountain Real Estate Capital LLC ("Mountain") was also her employer and/or "joint employer." (Document No. 14, p.3). Plaintiff further contends that Defendant Mountain Asset Management Group LLC ("Mt. Asset Mgmt.") was her employer and/or "joint employer," and that she received her paycheck from Mt. Asset Mgmt. (Document No. 14, p.4).

More specifically, Plaintiff alleges that she worked a "substantial number of overtime hours," but instead of paying her appropriately for those hours, Defendant Fioretti, Mountain's chief executive officer, sought to misclassify her as a 1099 independent contractor and an exempt, salaried employee of Mountain - in order to evade overtime pay requirements. (Document No. 14, p.1). "As a result, Plaintiff repeatedly complained to Fioretti about the fact that she was not being compensated for the substantial number of overtime hours that she was working." (Document No. 14, p.89). In or about June 2015, Plaintiff resigned her employment. (Document No. 14, pp.90-91).

Plaintiff alleges that Defendants retaliated against her when she sought compensation for her overtime hours by: demanding repayment of $25,000; threatening her arrest; and threatening to sue her boyfriend, John Milem ("Milem"). (Document No. 14, p.2, 91-92).

Baclawski initiated this action with the filing of her "Complaint" (Document No. 1) on September 8, 2015. Plaintiff contends that Defendants violated the Fair Labor Standards Act and the N.C. Wage and Hour Act by failing to pay Plaintiff time and a half for hours worked during the course of her employment, and by unlawfully retaliating against the Plaintiff. See (Document No. 1).

On November 4, 2015, Mountain and Fioretti filed an action against Plaintiff and Milem in the Superior Court of Mecklenburg County. (Document No. 14, p.92). The allegations in the state court action include stealing a mattress from Defendant Fioretti, using Defendants' money to repair a truck, and failing to disclose that Plaintiff had an economic interest in Milem's company when she recommended that Defendant Fioretti retain its services. Defendants contend that they were unable to bring these claims in this federal lawsuit because the claims are not compulsory counterclaims and because this Court did not have an independent jurisdictional basis over those claims or Milem.

Plaintiff's "First Amended Complaint" (Document No. 14) was filed on November 21, 2015, and asserts five (5) causes of action against Defendants: (1) Fair Labor Standards Act – Overtime Wages; (2) Fair Labor Standards Act – Retaliation; (3) N.C. Wage and Hour Act – Overtime Wages; (4) N.C. Wage and Hour Act – Retaliation; and (5) N.C. Retaliation In Employment Discrimination Act - Retaliation. (Document No. 14, pp.94-99). The "Answer to Amended Complaint by Peter Fioretti, Mountain Asset Management Group LLC, and Mountain Real Estate Capital LLC" (Document No. 15) was filed on December 14, 2015.

On January 6, 2016, the Court entered a "Pretrial Order And Case Management Plan" (Document No. 18). The Court set case deadlines as follows: discovery completion – July 15, 2016; mediation – August 5, 2016; motions deadline – September 16, 2016; and trial – January 9, 2017. (Document No. 18).

The parties filed a "Notice Of Settlement" (Document No. 28) on July 1, 2016; however, in exchanging settlement documents, the parties realized they had a continuing dispute that prevented complete agreement. See (Document Nos. 30, 33, 37 and 41). The undersigned ultimately declined to enforce the purported settlement agreement. See (Document No. 48).

On November 21, 2016, the parties filed their "Joint Stipulation of Consent to Exercise Jurisdiction by a United States Magistrate Judge." Case deadlines were re-set on January 19, 2017 as follows: discovery completion – March 31, 2017; motions deadline – April 21, 2017; and trial – August 7, 2017. (Document No. 55).

Plaintiff's "Motion For Summary Judgment" (Document No. 63) was filed April 18, 2017; and "Defendants' Motion For Partial Summary Judgment" (Document No. 65) was filed April 21, 2017. A motions hearing was held on June 29, 2017; and on July 18, 2017, the undersigned denied Plaintiff's motion in part, and granted in part and denied in part Defendant's motion. (Document No. 77). The Court concluded that Defendant's claims related to the state court action were not retaliatory as a matter of law, and thus granted Defendant's motion as to that part of Plaintiff's retaliation claims. (Document No. 77, pp.11-12).

On September 8, 2017, a Final Pretrial Conference was scheduled for October 24, 2017, to be followed by a trial beginning October 31, 2017. "Plaintiff's Emergency Motion To Continue Trial" (Document No. 107) was filed on October 23, 2017. The "…Emergency Motion…" was granted, but a Final Pretrial Conference / hearing was still held on October 24, 2017.

Following the hearing on October 24, 2017, the undersigned determined that the dispositive motions deadline should be re-opened for the limited purpose of addressing any remaining allegation of retaliation. See (Document No. 115, pp.5-6). Based on the arguments of counsel, it appeared likely that there was no genuine issue of fact regarding a retaliation claim to present to a jury. Id. The remaining retaliation claim seemed to simply be that Defendants had demanded Plaintiff "return a portion of her lawfully owed compensation." See (Document No. 115, p.5) (quoting Document No. 14, pp.91, 97-98). "Defendants' counsel acknowledged at the hearing that

4

they had initially made such a demand, but soon thereafter realized the demand was in error, and promptly withdrew their request for a return of compensation." Id.

Based on the foregoing, the parties were allowed to file additional dispositive motions by November 22, 2017; and this matter was re-scheduled for trial during the undersigned's civil term beginning February 5, 2018. (Document Nos. 115 and 116). A Final Pretrial Conference is scheduled for January 30, 2018. (Document No. 116).

Now pending before the Court are: "Defendants' Second Motion For Partial Summary Judgment" (Document No. 117) and Plaintiff's "Motion For Partial Summary Judgment" (Document No. 120) filed on November 22, 2017. These motions have been full briefed, with the exception of Plaintiff failing to file a reply brief, or notice of intent not to reply, as required by the Local Rules. See Local Rule 7.1 (e). As such, these motions are ripe for review and disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

5

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

When considering cross-motions for summary judgment, a court evaluates each motion separately on its own merits using the standard set forth above. See Rossignol v. Voorhaar, 316 F.3d 516, 522 (4th Cir. 2003); accord Local 2-1971 of Pace Int'l Union v. Cooper, 364 F.Supp.2d 546, 554 (W.D.N.C. 2005). Both Plaintiff and Defendants have moved for summary judgment, and the Court will analyze each motion in turn.

### III. DISCUSSION

**A. Defendants' "Second Motion For Partial Summary Judgment"**

During the hearing on October 24, 2017, Plaintiff's counsel asserted that Plaintiff's basis for the remaining retaliation claim is that: "after the Plaintiff complained about not being paid her wages, that the Defendants tried to take back from her, through threats, wages that she had lawfully earned . . . and that threats were made to Plaintiff that if she continued to press this issue of compensation, Defendants would work it out in a way that she would be paid less…." Counsel's statement at the hearing is similar to statements in the Complaint which allege a "shocking campaign of retaliation" by Defendants and "an effort to bully her out of enforcing her rights under the FLSA." (Document No. 14, pp.91-98). Plaintiff specifically alleged that "First Mountain's

6

CFO, Kevin Mast demanded in writing that Plaintiff pay back over $25,000 of her compensation, allegedly on the ground that she had not properly documented her expenses." (Document No. 14, p.91).

As noted above, the Court re-opened the dispositive motions deadline based on the parties' arguments and statements at the hearing. Defendants' pending motion seeks summary judgment on Plaintiff's three claims based on retaliation: the second cause of action asserting a claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*; the fourth cause of action brought under the North Carolina Wage and Hour Act ("NCWHA"), N.C.Gen.Stat. §95-25.1, *et seq.*; and the fifth cause of action making a claim pursuant to the North Carolina Retaliation in Employment Discrimination Act ("REDA"), N.C.Gen.Stat. §95-240, *et seq*. (Document No. 117); see also (Document No. 14, pp.95-99). Since Defendants' filing, Plaintiff has stated that she does not contest dismissal of the NCWHA and REDA retaliation claims; therefore, the remaining claim to be determined at this stage is Plaintiff's second cause of action asserting a FLSA claim. (Document No. 123, p.1).

Now that the issue of retaliation has been more thoroughly analyzed and briefed, it appears that Plaintiff's allegations, as well as both parties' statements at the hearing, were not completely accurate. Rather than support for the assertions of multiple threats against Plaintiff, or a "retaliation campaign," the only purported evidence of retaliation now before the Court is a single email by Kevin Mast to Plaintiff on June 12, 2015. Both sides attach that email to their instant motions. See (Document Nos. 118-4 and 121-3).

In most pertinent, part the email states:

> Anne, per the attached detail from our expense reimbursement system, it appears you have received reimbursement for $27,024.79 for expenses incurred. However, it appears that we were not

7

> provided receipts or appropriate documentation relating to $22,051.16 of these items. . . . Without proper documentation, we are going to need to collect these undocumented expenses back from you.  **Please either submit the required documentation, or provide us with a check in the amount of $22,051.16 by no later than the end of the week next week**.

(Document No. 118-4, p.2;  Document No. 121-3, p.1) (emphasis added).  Later that day, Plaintiff responded to Mr. Mast's request with a strongly-worded email:  explaining some of her expenses; making clear that she believed she had followed proper procedures;  asserting that she had complete records;  and emphasizing that she would not be making *any* payment to Defendants. (Document No. 118-4, p.3;  Document No. 121-3, p.2).

No evidence of any additional requests, or any other demands, threats, or communication at all between the parties regarding this issue have been presented to the Court.  Instead, Defendants have asserted that they realized soon after Plaintiff's email response that they had the information they needed, and would not be seeking further documentation or payment from Plaintiff.  However, just as Plaintiff's claims have not been fully supported, the evidence (or lack thereof) also indicates that Defendants never notified Plaintiff that she did *not* have to pay them back, as Defendants' counsel had suggested during the recent hearing.

Nevertheless, it is undisputed that Defendants' one week deadline for a check for $22,051.16 (not $25,000) passed without comment from Defendants.  Moreover, almost three (3) months passed – without any further request, demand, or threat from Defendants regarding her expenses, documentation, or reimbursement – before Plaintiff's original Complaint asserting three (3) retaliation claims was filed.  (Document No. 1).

In contrast to Plaintiff's position that she was bullied or dissuaded from pursing her FLSA rights, the undisputed evidence is that Plaintiff sent written complaints alleging FLSA violations

8

to Defendants two days prior to Mr. Mast's email, and that she later filed a Complaint asserting retaliation claims under the FLSA *and* state law. (Document Nos. 1. 14); see also (Document No.. 121, p.3). Plaintiff's response to Mr. Mast's email was a forceful rebuttal of Defendants' "demands," and effectively ended Defendants' inquiry for any records or returned payments from Plaintiff. See (Document No. 118-4, p.3; Document No. 121-3, p.2). Following Plaintiff's response, Mr. Mast determined that Plaintiff had submitted sufficient support for her expense reimbursements to Heather Rooker in Defendants' accounting department, and thus "ceased all efforts to collect additional documentation or expense refunds from Plaintiff." (Document No. 118, p.3)(citations omitted). Plaintiff acknowledges that Defendants have "concede[d] that Plaintiff was entitled to this money all along." (Document No. 121, p.4).

In support of their motion, Defendants now argue that Plaintiff cannot establish the second or third elements of a FLSA retaliation claim. (Document No. 118, pp.6-10). Defendants note that to establish a retaliation claim under the FLSA, Plaintiff must prove: "(1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." (Document No. 118, p.6) (quoting Johnson v. North Carolina, 5:11-CV-057-RLV, 905 F.Supp.2d 712, 721 (W.D.N.C. 2012) (quoting Darveau v. Detecon, Inc., 515 F.3d 334, 340 (4th Cir. 2008)).

First, "Defendants assume, without admitting, that Plaintiff's post-resignation oral and subsequent electronic mail complaints of alleged entitlement to overtime pay were sufficient to constitute an activity protected by the FLSA." (Document No. 118, p.7) (citations omitted).

Next, Defendants argue that the second element cannot be satisfied because Mr. Mast's email "simply does not constitute conduct that is materially adverse to Plaintiff." (Document No.

9

118, p.8). Defendants note that "petty slights, minor annoyances, and simple lack of good manners, which are not uncommonly found in the workplace, do not qualify as materially adverse employment actions." (Document No. 118, p.7) (quoting Howard v. ConvaTec, Inc., 2015 WL 867295, at *7 (M.D.N.C. March. 2, 2015) (quoting Wilcoxon v. DECO Recovery Mgmt., LLC, 925 F.Supp.2d 725, 731 (D.Md. 2013) (quoting White, 548 U.S. at 68))). Defendants contend that they simply asked Plaintiff to submit additional documentation, or return her reimbursements, and that they then immediately ceased all conduct related to the expenses. (Document No. 118, p.8).

Defendants further argue that no reasonable employee would be dissuaded from pursuing her rights based on Mr. Mast's emails, and in fact, Plaintiff was not dissuaded from pursuing her rights. (Document No. 118, pp.8-9) (quoting Brach v. Conflict Kinetics Corp., 2017 WL 3267961, at *20 (E.D.Va. July 31, 2017) ("'[t]o state the obvious,' the plaintiff himself was not dissuaded from pursuing his FLSA claims and continued with the litigation"). Defendants also note that Plaintiff has the burden of proof and has failed to show that she suffered some adverse action as a result of Mr. Mast's emails. Id.

Finally, Defendants contend that there is no causal connection between the Mast email and Plaintiff's complaint about alleged entitlement to overtime wages. (Document No. 118, p.9). Defendants acknowledge that Mr. Mast's email was temporally close to Plaintiff's complaint regarding overtime wages, but assert that the email was not in response to, or caused by, Plaintiff's complaint. Id. Defendants contend that they had a legitimate, non-retaliatory reason for Mr. Mast's email – to ensure all reimbursement payments were properly documented and accounted for. Id.

In response, Plaintiff argues that "the Fourth Circuit has expressly held that the FLSA's anti-retaliation provisions broadly extend to any conduct 'that could well dissuade a reasonable

10

worker from making or supporting a charge of discrimination,' including former employees." (Document No. 123, p.7) (quoting Darveau, 515 F.3d at 343). Plaintiff then seems to assert that Defendants' communication of "a false demand for $22,000" of Plaintiff's lawfully earned money was retaliation. (Document No. 123, p.8). Moreover, Plaintiff suggests the conduct here was "both undertaken for a retaliatory motive and lacked a reasonable basis in fact or law." Id. Regarding the adverse action element, Plaintiff concludes that "the jury (and the Court) can see this for what it is – Defendants concocted a false demand for $22,000." (Document No. 123, p.9).

As to causal connection, Plaintiff argues that the close temporal proximity of Plaintiff's complaint and the Mast email is more than sufficient to find for Plaintiff. (Document No. 123, p.10).

In reply, Defendants argue that an email about expense documentation or reimbursement is simply not adverse, much less materially adverse. (Document No. 124, p.5). Defendants further argue that Mr. Mast did not "simply demand $22,000 from Plaintiff" or make a "false demand." Id. Rather, Defendants contend that Mr. Mast's email *asked* Plaintiff to *either* submit the required documentation *or* return the expense reimbursements. Id. Defendants note that Plaintiff has failed to articulate how Mr. Mast's email was materially adverse or could actually dissuade a reasonable employee from pursuing rights under FLSA. (Document No. 124, p.6).

In addition, Defendants argue that even if Plaintiff could make a prima facie case for retaliation, they have "stated a legitimate non-discriminatory explanation for Mr. Mast's email, which rebuts a prima facie case and shifts the burden back to Plaintiff to show pretext. (Document No 124, p.8) (citing Robinson, 815 F.Supp.2 at 943). Defendants contend that Mr. Mast "looked into various issues following Plaintiff's resignation to make sure everything was in order." Id.

11

Defendants conclude that Plaintiff has failed to come forward with sufficient evidence to establish that their articulated reason for the email is merely a pretext for retaliation, and argue that temporal proximity is not enough. (Document No. 124, p.9) (citations omitted).

The undersigned finds Defendants' arguments persuasive. Even viewing the evidence in the light most favorable to Plaintiff, the undersigned cannot find that there is a dispute about a material fact such that "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. As discussed above, the crux of the remaining allegation for retaliation is Kevin Mast's email dated June 12, 2015. (Document No. 118-4; Document No. 123-2). The undersigned has carefully reviewed that email and cannot find that a reasonable employee (or jury) would construe Mr. Mast's request that Plaintiff "[p]lease either submit the required documentation or provide us a check…," as an adverse employment action.

The undersigned finds the Brach decision instructive. "The key inquiry in a post-employment retaliation claim is whether the defendant's actions were 'materially adverse' and 'could well dissuade a reasonable worker from making or supporting a charge' that their employer is violating, or has violated, the statute's substantive provisions." Brach, 2017 WL 3267961, at *19 (quoting Darveau, 515 F.3d at 343. The court in Brach granted summary judgment in favor of the former employer stating in part:

> To state the obvious, Brach himself was not dissuaded from pursuing his allegations in this case; he has stuck to his guns from day one . . . The text messages, viewed in the context of the full factual record, are far from retaliatory or threatening; instead, they are pleas to avoid litigation and true statements warning that CKC had viable counterclaims, that attorneys' fees would swell as the case proceeded, and that Brach could potentially lose significant sums of money. These text messages are simply not actionable in light of this record. . . . There is no evidence in this factual record that CKC filed its counterclaims with 'retaliatory motive,' nor is

12

> there any indication that CKC lacked a 'reasonable basis in fact or law' for its counterclaims.

Brach, 2017 WL 3267961, at *20.

Like the plaintiff in Brach, Plaintiff here was not dissuaded. Far from being dissuaded or intimidated, the evidence shows that Plaintiff promptly responded with a statement showing that she was confident in her position on the matter and would not provide anything to Defendants. (Document No. 118-4, p.3; Document No. 123-2, p.2). The closing paragraph of Plaintiff's response neatly sums up her view:

> This is all absurd. I'm not sending you a check for anything. I hope you feel good about yourself trying to screw a damn good person out of what is rightfully mine. I expected this though. I have all the same emails that you have and more. I save EVERYTHING. I have every single memo, minutes from my meetings and phone calls with Pete. I have it all.

Id. Plaintiff thus asserts that she *expected* some sort of request like Mr. Mast's email and was confident she had all the documentation she needed. Id.

Just as Mr. Mast's email did not dissuade Plaintiff from standing her ground and pursuing multiple claims against her former employer in a federal lawsuit, the undersigned is not persuaded that the email in question would dissuade any other reasonable worker from making or supporting a charge of discrimination, if they thought they had a basis for such a claim. See Darveau, 515 F.3d at 343 (quoting Burlington Northern,126 S.Ct. at 2409) ("a plaintiff asserting a retaliation claim under the FLSA need only allege that his employer retaliated against him by engaging in an action "that would have been materially adverse to a reasonable employee" because the "employer's actions ... could well dissuade a reasonable worker from making or supporting a charge of discrimination."

13

The undersigned is also not persuaded other reasonable workers would even construe Mr. Mast's email as a demand, threat, or adverse employment action. Rather, Mr. Mast's email is more likely to be construed as a request for information (or payment) following an employee's resignation. At worst, the email indicates a misunderstanding or mistake by Mr. Mast regarding the status of Plaintiff's expense reimbursements.

Based on the foregoing, including Plaintiff's abandonment of her NCWHA and REDA claims, the undersigned finds that summary judgment should be granted in favor of Defendants on all Plaintiff's retaliation claims.

## B. Plaintiff's "Motion For Partial Summary Judgment"

As noted above, Plaintiff has filed her own motion for summary judgment on her second cause of action for retaliation under the FLSA. (Document No. 120). The undersigned has carefully analyzed Plaintiff's motion and the related briefs and finds that they involve the same emails and issues discussed above.

Notably, Plaintiff's "Memorandum Of Law…" states that "the undisputed facts establish that Defendants engaged in retaliation by demanding that Plaintiff return a significant portion of her compensation in response to Plaintiff's overtime complaints." (Document No. 121, pp.4-5). Based on the evidence discussed above, the undersigned finds this statement to be at best inaccurate, and at worst misleading. Even in the light most favorable to Plaintiff, the evidence does not support a conclusion that Defendants simply demanded a return of Plaintiff's compensation. See (Document No. 121-3, p.1) ("Please either submit the required documentation, or provide us a check in the amount of $22,051.16 by no later than the end of the week next week.") Moreover, Plaintiff knows that Defendants dispute that they engaged in retaliation and that Mr. Mast's email was in response to Plaintiff's overtime complaints.

14

In short, the undersigned finds Plaintiff's motion to be conclusory – without sufficient support of facts or legal authority to allow summary judgment for Plaintiff. At minimum, as discussed above, Plaintiff has failed to identify an adverse employment action. Even if Plaintiff's arguments could be construed as satisfying all the elements of a FLSA retaliation claim, the undersigned agrees that Defendants have identified legitimate non-discriminatory reasons for their actions that Plaintiff has subsequently failed to rebut. See Howard v. ConvaTec, Inc., 2015 WL 867295, at *8.

Based on the reasoning above, the arguments in Defendants' "Memorandum Of Law In Opposition To Plaintiff's Motion…" (Document No. 122), and Plaintiff's failure to file a reply brief, the undersigned will deny Plaintiff's motion for summary judgment.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendants' Second Motion For Partial Summary Judgment" (Document No. 117) is **GRANTED**; and Plaintiff's "Motion For Partial Summary Judgment" (Document No. 120) is **DENIED**.

**IT IS FURTHER ORDERED** that counsel for the parties shall appear before the undersigned for a Final Pretrial Conference at 2:00 p.m. on **January 30, 2018**.

**SO ORDERED**.

Signed: January 9, 2018

David C. Keesler
United States Magistrate Judge